## IN THE UNITED STATES DISTRIC COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **FAUSTINO XAVIER BETANCOURT COLÓN**<br><br>**Plaintiff**<br><br>**vs.**<br><br>**RESTAURANTE EL PLATANAL, INC**<br><br>**Defendant** | **CIVIL No.** |

## <u>COMPLAINT</u>

**TO THE HONORABLE COURT:**

**COMES NOW** the plaintiff, Faustino Betancourt Çolón, and respectfully requests a permanent injunction against Restaurante el Platanal, Inc., in accordance with the provisions of Title III of the *Americans with Disabilities Act,* C.F.R. § 36.302(e), and Article 1536 of the Puerto Rico Civil Code. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims because all actions complained of herein take place within the jurisdiction of the United States District Court for the District of Puerto Rico, and the Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

### I.      PARTIES

1.     The name of the plaintiff is: Faustino Xavier Betancourt Colon. His mailing address is: Res Los Lirios Apt.34, 11 Calle Teresa Jornet, Building 12, APT 34, San Juan (Cupey), PR 00926-7561. His physical address is: Res Los

Lirios Apt.34, 11 Calle Teresa Jornet, Building 12, APT 34, San Juan (Cupey), PR 00926-7561. His phone number is: (787) 348-7280.

2.     The name of the defendant is Restaurante el Platanal, Inc. The defendant is a legal entity with the Merchant Certificate Number: 0356379-0070.

3.     The Defendant is a for-profit corporation, identified in the Puerto Rico corporate registry with the number 188469.

4.     The Defendant is the owner, lessor, lessee, and/or operator of the public accommodation place identified in paragraph 11.

## II.     FACTS

### A.  About the Medical Conditions of the Plaintiff

5.     Mr. Faustino Betancourt Colón has the following conditions: (1) hypertension, (2) type II diabetes mellitus; (3) diabetic neuropathy; (4) osteoarthritis; (5) inflammatory arthritis; (6) hydrocephalus; (7) congestive heart failure; (8) deformity in both feet; (9) chronic obstructive pulmonary disease; (10) sleep apnea; (11) degenerative joint disease of the lumbar spine; (12) carpal tunnel syndrome. Due to congestive heart failure, an automatic defibrillator was implanted in February 2012 to prevent sudden death.

6.     The various conditions that Mr. Betancourt Colón faces have had a significant impact on his mobility, placing him at a disadvantage compared to the average person in the general population. Among these conditions, congestive heart failure is particularly problematic as it causes swelling in his

feet, resulting in intense pain that greatly limits his ability to walk. What might seem like a simple act of moving around becomes a painful and challenging experience for him.

7.    Furthermore, congestive heart failure significantly affects his overall ability to move. Any activity that involves walking leads to breathlessness and may even trigger episodes of hyperventilation. This limitation in his ability to breathe properly during physical activity further restricts his freedom of movement and independence in daily life.

8.    These physical limitations have a profound impact on Mr. Betancourt Colón's life. Simple tasks that he used to perform effortlessly, such as going from one place to another, are now affected by the pain and fatigue he experiences due to his medical conditions. His autonomy is drastically reduced as he increasingly relies on assistance from others to carry out basic activities.

9.    To make matters worse, the presence of deformities in his feet also significantly contributes to his mobility limitations and the challenge of maintaining balance. These deformities pose an additional obstacle that affects his ability to move smoothly and safely, further complicating his day-to-day life. In summary, Mr. Betancourt Colón faces multiple obstacles that considerably restrict his mobility. The complications arising from congestive heart failure and the deformities in his feet create a scenario where walking and maintaining balance become difficult and painful tasks. His ability to move is severely affected, impacting his quality of life and independence in

performing daily activities.

10.   In this context, it becomes evident that Mr. Betancourt Colón faces significant challenges in maintaining his quality of life and fully participating in society. The importance of his mobility and the ability to move without limitations become even more relevant for his overall well-being. Therefore, it is crucial that his medical conditions are taken into consideration when analyzing any issue related to his access to public places or services to ensure that he is provided with the necessary opportunities and accommodations to guarantee his inclusion and participation in the community.

### B. About The Property in Controversy and Jurisdiction of The Court

11.   The properties in controversy are both public accommodation places known as "El Platanal," and they are differentiated as follows:

   a.   "El Platanal" located at Carretera 167 Rexville Plaza, Bayamón, PR 00619, with coordinates 18.36715369775471, -66.18769891714902 (hereinafter referred to individually as "El Platanal Bayamón").

   b.   "El Platanal" located at 1596 Cll Bori, San Juan, 00927, Puerto Rico, with coordinates 18.381999112010718, -66.06885653730355 (hereinafter referred to individually as "El Platanal San Juan").

         (In the future, we will refer to both places as "the property.")

12.   Restaurante el Platanal, Inc., is the owner of the public accommodation identified in paragraph 11.

13.   Restaurante el Platanal, Inc., is the lessor of the public accommodation identified in paragraph 11.

14.   Restaurante el Platanal, Inc., is the lessee of the public accommodation identified in paragraph 11.

15.   Restaurante el Platanal, Inc., is the operator of the public accommodation identified in paragraph 10.

## C. Discrimination at the Property Against the Plaintiff Based on her Disability

16.   Mr. Faustino Betancourt visited El Platanal San Juan on September 22, 2022, and subsequently El Platanal Bayamón on July 2, 2023.

17.   From the moment Mr. Faustino Xavier Betancourt Colón set foot in El Platanal, he knew he had discovered a culinary treasure, which is the main reason why he has visited the restaurant at its different locations and intends to continue doing so. Adding to this experience, the soft Latin music that permeated the speakers created an authentic and relaxing ambiance characteristic of the restaurant, enticing him to explore the diverse culinary offerings.

18.   The renowned El Platanal plantain sandwich immediately captured his attention. With a perfect combination of sweet and savory, crispy on the outside and tender on the inside, each bite was a revelation for his palate, leaving him eager for more.

19.   But El Platanal is not limited to just plantains. Faustino was also

impressed by the stuffed mofongo, which he tried with both shrimp and pork. In each version, fresh ingredients and bold flavors came together to create a memorable dish. Adding the avocado stuffed with shrimp, a true delight where the smooth avocado beautifully contrasts with the juicy shrimp, it becomes clear that El Platanal offers an exceptional culinary experience.

20.   The breaded chicken breast and the incredible variety of stuffed empanadas were other gems that Faustino discovered during his visits to El Platanal. Each of these dishes seemed like an explosion of flavors, elevating the experience of Puerto Rican gastronomy to another level.

21.   In addition to these dishes, El Platanal also takes pride in a series of other culinary delights. The seafood asopao, fried meat with mofongo, creole-style dorado fillet, onion-steak with pastelón rice, and the mofongo stuffed with ropa vieja are just a few of the other dishes that Faustino enjoyed during his visits. Each of these dishes offers a unique culinary experience, brimming with taste and authenticity.

22.   For Faustino, visiting El Platanal is like embarking on a culinary journey through Puerto Rico, an experience to be savored and enjoyed with every bite. No matter which dish he chooses, he is always impressed by the quality, flavor, and authenticity that each one offers. In summary, for him, El Platanal is not just a restaurant; it is an unforgettable culinary experience that he is always eager to repeat at its different locations.

23.   As a result of his visits to the different locations of the restaurant, the

plaintiff became aware of the following architectural barriers:

**El Platanal San Juan**

**Restaurant Access Area**

24.    Mr. Faustino Betancourt, with a physical disability that requires the use of a scooter, faces a significant problem at the restaurant due to the entrance door. The door opens inward and is narrow, measuring only 26 3/8" wide, making it difficult for him to pass comfortably and violating ADAAG 2010 §404.2.3 regulations. This results in considerable difficulties each time he tries to enter the restaurant, jeopardizing his safety and generating feelings of exclusion and inequity. The lack of proper accessibility suggests that the restaurant does not value or respect the special needs of its customers.

25.    The entrance door knob to the restaurant is circular and gray, requiring the plaintiff, who uses a scooter due to his disability, to twist his wrist to use it. This makes it difficult for him to open the door comfortably and causes discomfort during his visits, risking injury to his hands, arms, or back as he tries to manipulate the knob from his position on the scooter. Additionally, the knob does not comply with accessibility regulations that establish the optimal height for door hardware. The lack of proper accessibility makes the plaintiff feel excluded and disadvantaged at the restaurant. The difficulty in entering and exiting the place creates a sense of unwelcomeness and a loss of independence and autonomy, as he may need assistance from others to open

the door. ADAAG 2010 § 309.4 states that knobs and handles of doors and faucets must allow for one-handed operation without the need to grasp tightly, pinch, or twist the wrist. The force required to activate operable parts shall be a maximum of 5 pounds (22.2 N).

26.    The improper height of the latch, located at 65 inches, presents another challenge for Mr. Faustino Betancourt. Reaching and manipulating it requires additional effort and exposes him to the risk of falls and injuries. All of this contributes to a feeling of exclusion and frustration for the plaintiff, emphasizing the need for the restaurant to address these accessibility issues to ensure a welcoming and inclusive environment for all individuals, regardless of their disabilities. By doing so, the restaurant will demonstrate its commitment to equal opportunities and respect for the needs of its customers. ADAAG 2010 § 404.2.7 states that as operable parts of hardware, latches shall be located a minimum of 34 inches (865 mm) and a maximum of 48 inches (1220 mm) above the finished floor or ground.

**Service and Dining area**

27.    Given that Mr. Faustino Betancourt relies on a scooter due to his physical disability, the poor placement of the electrical switch limits his ability to access and use the switch independently and safely. The location of the electrical switch at a height of 53 11/16" from the floor exceeds the maximum allowed by the applicable regulations, which means that Faustino cannot comfortably reach or manipulate it from his scooter. This situation forces him

to rely on the assistance of others to operate the switch, which is uncomfortable and invasive for him. ADAAG 2010 §404.2.7 specifies that light switches should be located between 34 inches (865 mm) and 48 inches (1220 mm) above the finished floor or ground, ensuring accessibility for individuals with disabilities, including those using wheelchairs or scooters.

28.   The lack of proper accessibility to this electrical switch not only affects his independence and autonomy, but also can lead to feelings of frustration and exclusion. Mr. Faustino Betancourt should have the same capability as any other customer to access the services and facilities of the establishment without facing unnecessary physical barriers.

29.   During his visit, the plaintiff, Mr. Faustino Betancourt, noticed that the service and payment counter at the restaurant is extremely high for someone with disabilities, like himself. Mr. Faustino Betancourt relies on a scooter for mobility due to his physical disability, and this situation poses a significant challenge for him.

30.   The height of the counter, measuring 48 11/16" from the floor to the highest surface, is well above what would be accessible and comfortable for individuals with physical impairments like the plaintiff while using his scooter. Every time he needs to interact with the restaurant staff to place an order or make a payment, he is forced to stretch excessively or find alternative ways to reach the counter from his position on the scooter. This lack of proper accessibility directly impacts the plaintiff's experience at the restaurant. He

not only feels excluded and disadvantaged but also finds it difficult to perform everyday actions like placing an order or making a payment, which leads to feelings of frustration and humiliation. Having to rely on the assistance of others to reach the counter affects his self-esteem and self-confidence.

31.    The provisions established in ADAAG 2010 §§308.3.1, 308.3.2, 308.2.1 determine the following: Firstly, it is important to have a portion of the counter that has dimensions of 36 inches high by 36 inches wide, providing adequate space for interaction with the staff. It is also mandatory to have a clear floor space of at least 30 inches wide by at least 48 inches long to allow for front or parallel access. Regarding parallel approach, it is a requirement that the clear floor space is positioned so that the 48 inches are adjacent to the accessible length of the counter. Additionally, no less than 17 and no more than 25 inches of the clear floor space must extend beneath the accessible length of the counter. Finally, there must be a clear space of at least 27 inches from the floor to the bottom of the counter.

### Restrooms and sinks

32.    Due to his condition, Mr. Faustino Betancourt has a recurring need to use the restroom, and when he entered the restaurant's restroom, he noticed that the mirror located above the sink and near the urinals is inaccessible to him, as it is placed at a height of 47" from the floor to the point where the glass reflects the image. This situation presents a significant challenge for the plaintiff, who moves around on a scooter due to his physical disability.

33.    The lack of proper accessibility of the restroom mirror directly affects Mr. Betancourt each time he needs to use it. Being located at a height of 47", it is practically impossible for him to see his reflection from his position on the scooter. This is frustrating and demoralizing, as it prevents him from performing a daily task independently and without external assistance. The inaccessibility of the mirror can make the plaintiff feel excluded and overlooked, as he cannot enjoy the same facilities as other customers. Additionally, having to depend on others to check his appearance or make personal adjustments in front of the mirror affects his privacy and self-esteem.

34.    The provisions established in ADAAG 2010 §§213.3.5; 603.3 are clear regarding the maximum allowable height for mirrors located above sinks or countertops, which is 40 inches (1015 mm) above the finished floor or ground. However, the mirror in the restaurant's restroom exceeds this limit, posing a barrier for all customers with impairments, like the plaintiff.

35.    The lack of accessible urinals in the restaurant significantly affects Mr. Faustino Betancourt, who relies on a scooter for mobility due to his physical disability. The inadequate height of the urinals, measuring 20 11/16" (twenty and eleven-sixteenths inches), makes it extremely challenging and uncomfortable for him to use them independently and safely. Mr. Faustino Betancourt cannot enjoy the same convenience and ease as other customers when using the restrooms, which negatively impacts his overall restaurant experience. Additionally, he may find himself in uncomfortable and

embarrassing situations if he is forced to seek help or wait for someone to assist him.

36.    As the height of the urinals exceeds the maximum allowed by ADAAG 2010 §605.2, the plaintiff cannot access them properly from his scooter. This forces him to rely on the assistance of others every time he needs to use the restroom, leading to feelings of dependence and vulnerability.

37.    The lack of accessibility of the sink in the restaurant significantly affects Mr. Faustino Betancourt, who relies on a scooter for mobility due to his physical disability. The bowl-type design and inadequate height of the sink create significant barriers that prevent him from using it effectively and safely.

38.    It is virtually impossible for the plaintiff to reach the sink from his seated position on the scooter. This lack of accommodation deprives him of a basic right: the ability to access essential facilities such as handwashing, which is crucial for personal hygiene and well-being. It significantly impacts Mr. Faustino Betancourt as he is forced to depend on the assistance of others every time, he needs to wash his hands, compromising his autonomy and privacy. This forced dependence creates uncomfortable and humiliating situations for him, as he must seek help from strangers for such a basic and personal task. ADAAG 2010 § 606.3 establishes that sinks should be installed with the front edge of the highest surface at a maximum of 34 inches (865 mm) above the finished floor or ground. By complying with ADAAG guidelines and installing

sinks at an appropriate height, the restaurant could create a more inclusive and accessible environment for Mr. Betancourt and other individuals with disabilities. Making this simple adjustment would enhance his experience at the establishment and demonstrate the restaurant's commitment to equal opportunities and respect for the needs of all its customers.

39.  Mr. Betancourt Colón observed that there is no accessible restroom in the restaurant, as the only enclosed restroom available in a cubicle has the following architectural barriers:

    a.  Mr. Faustino Betancourt observed that the area of the only enclosed restroom for customers is insufficient, as it is small and narrow and does not comply with the guidelines established in ADAAG 2010 §604.2. This section states that the toilet must be positioned with a wall or partition at the back and on one side. The centerline of the toilet should be a minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm) from the side wall or partition, except when the toilet is positioned a minimum of 17 inches (430 mm) and a maximum of 19 inches (485 mm) from the side wall or partition in the compartment of the toilet accessible for ambulatory individuals. In other words, the toilets must be placed in a way that allows access from either the left or the right. Additionally, it also violates the provisions of ADAAG 2010 §604.3.1, which require a minimum "turning space" of 60 inches (1525 mm) for mobility devices, measured perpendicularly from the side wall,

and a minimum of 56 inches (1420 mm) measured perpendicularly from the back wall. To ensure accessibility and equal opportunities for all customers, it is imperative to make modifications to the design and layout of the restroom area. Implementing a "turning space" of at least 60 inches would allow individuals with disabilities, like Mr. Betancourt Colón, to have enough space to maneuver and perform necessary movements within the restroom. The narrowness of the space makes it impossible for him to maneuver his scooter, and his inability to move properly inside the restroom negatively affects his independence and dignity. He is forced to forgo using his device to access the toilet and instead seek assistance from others. As a consequence, he is exposed to the risk of injuries, collisions, and humiliation.

b.     The toilet located in the only restroom cubicle for customers is too high for use by individuals with disabilities. This violates the provisions of the applicable federal regulations and causes Mr. Faustino Betancourt unnecessary discomfort and inconvenience, subjecting him to a discriminatory and humiliating situation as it forces him not to use his mobility device and seek assistance from others to access the facility. ADAAG 2010 §213.3.2 states that at least one compartment or cubicle must be accessible, and ADAAG 2010 §604.4 specifies that the height of a toilet seat above the finished floor shall be a minimum of 17 inches (430 mm) and a maximum of 19 inches (485 mm), measured to the top

of the seat. Seats shall not have springs to return to a raised position.

c.     This single enclosed restroom lacks grab bars or support bars, in clear violation of the applicable regulation, ADAAG 2010 §604.5, which refers to the provisions in ADAAG 2010 §609 regarding the proper installation of support bars. It specifies that circular cross-section grab bars must have an outer diameter of at least 1/32 inches (2 mm) and a maximum of 51 inches, and non-circular ones must have a cross-sectional dimension of 2 inches (51 mm) at most and a perimeter dimension of at least 4 inches (100 mm) and a maximum of 4.8 inches (120 mm). The space between the wall and the grab bar should be 1/38 inches (1 mm). The space between the grab bar and protruding objects below and at the ends should be at least 38/12 inches (305 mm). The grab bars must be installed horizontally, at least 33 inches (840 mm), and at most 36 inches (915 mm) above the finished floor, measured to the top of the gripping surface. For Mr. Betancourt Colón, grab bars are essential for his safety and comfort when using the restroom. Without them, he faces difficulties when transferring from his scooter to the toilet or sink. Grab bars provide stability and support, allowing him to maneuver safely and maintain balance during these transitions. The absence of proper grab bars can result in an uncomfortable and hazardous experience, increasing the risk of accidents and falls. Additionally, this situation forces him to rely more on the assistance of

others for tasks that should be accessible to him independently, generating feelings of frustration and exclusion for Mr. Betancourt Colón.

d.    Furthermore, another factor that affects the required clear space around the toilet is the positioning of the toilet paper dispenser. Mr. Betancourt Colón observed that it is substantially inconsistent with the applicable regulations, as it is placed too close to the toilet and at an inappropriate height for comfortable use by a person with a disability. ADAAG 2010 §§ 604.7, 604.9.6 stipulate that toilet paper dispensers should be installed at a maximum height of 36 inches (915 mm) above the finished floor. Additionally, given the narrowness of the restroom space as explained earlier, the toilet paper dispenser becomes an additional obstacle for a disabled person, such as Mr. Betancourt Colón, who uses a wheelchair or similar device, to maneuver their device without hitting the dispenser. Not being able to access the dispenser comfortably and safely forces him to depend on the assistance of others once again, affecting the autonomy and dignity of Mr. Faustino Betancourt.

e.    Mr. Faustino Betancourt, who has a physical disability that requires the use of a scooter, faces a significant problem at the restaurant due to the entrance door to the only enclosed or cubicle restroom. The door opens outward and is narrow, measuring only 26

6/16" wide, making it difficult for him to pass through comfortably and violating ADAAG 2010 §404.2.3 regulations. As a result, he faces considerable challenges every time he attempts to enter the restroom, compromising his safety and evoking feelings of exclusion and inequality. The lack of proper accessibility suggests that the restaurant does not value or respect the unique needs of its customers.

### El Platanal Bayamón

#### Parking

40.    Upon arriving at the restaurant, Mr. Faustino Betancourt realized that there were not the required minimum number of spaces for vehicles or van-type trucks, which clearly violated ADAAG 2010 §§ 502.1. This regulation stipulates that at least one space per every 6 parking spots should be designated for van-type trucks.

41.    Consequently, the defendant also fails to comply with ADAAG 2010 §502.2. This federal regulation orders that the accessible space for van-type trucks should be at least 11 feet wide, with an access aisle of at least 5 feet wide. Alternatively, both the truck space and the aisle can have a width of 8 feet. Additionally, ADAAG 2010 § 502.3 requires that the access aisle should connect to the accessible route to the property entrance, and this configuration is also absent in the restaurant's parking area.

42.    The plaintiff also noted that there was no parking space near the

restaurant's entrance designated with the international accessibility symbol indicating the area for van-type trucks. According to ADAAG 2010 §502.6, the space designated for van-type trucks must be clearly marked as such using the accessibility symbol and the phrase "van accessible."

43.    These accessibility barriers greatly hinder his experience when trying to access the restaurant and enjoy its services. The lack of suitable spaces for van-type trucks means there are no appropriate places to park his vehicle, limiting his ability to visit the restaurant independently. Furthermore, the failure to meet the appropriate dimensions for accessible spaces and the lack of clear signage further impairs his mobility and safety while navigating the parking lot and the vicinity of the establishment. This situation not only affects Mr. Betancourt's comfort and dignity but also represents clear discrimination against people with disabilities by not providing them with equal opportunities to participate in everyday activities.

### Service and Dining area

44.    During his visit, the plaintiff, Mr. Faustino Betancourt, noticed that the service and payment counter at the restaurant, which features distinctive wooden and black details, is extremely high for someone with a disability, like himself. Mr. Faustino Betancourt relies on a scooter due to his physical disability, and this situation presents a significant challenge for him, especially because objects are placed on top of the counter, and food and beverages are served, services that are beyond his reach.

45.   The height of the counter, measuring 44" from the floor to the highest surface, is well above what would be accessible and comfortable for individuals with physical impairments like the plaintiff while using his scooter. Every time he needs to interact with the restaurant staff to place an order or make a payment, he is forced to stretch excessively or find alternative ways to reach the counter from his position on the scooter. This lack of proper accessibility directly impacts the plaintiff's experience at the restaurant. He not only feels excluded and disadvantaged but also finds it difficult to perform everyday actions like placing an order or making a payment, which leads to feelings of frustration and humiliation. Having to rely on the assistance of others to reach the counter affects his self-esteem and self-confidence. The entire lower part has a configuration that obstructs front approach from a wheelchair or similar device. Additionally, all the movable chairs located in front of it are too high.

46.   The provisions established in ADAAG 2010 §§308.3.1, 308.3.2, 308.2.1 determine the following: Firstly, it is important to have a portion of the counter that has dimensions of 36 inches high by 36 inches wide, providing adequate space for interaction with the staff. It is also mandatory to have a clear floor space of at least 30 inches wide by at least 48 inches long to allow for front or parallel access. Regarding parallel approach, it is a requirement that the clear floor space is positioned so that the 48 inches are adjacent to the accessible length of the counter. Additionally, no less than 17 and no more than 25 inches of the clear floor space must extend beneath the accessible

length of the counter. Finally, there must be a clear space of at least 27 inches from the floor to the bottom of the counter.

**Restrooms and sinks**

47.    The lack of accessibility of the sink in the restaurant significantly affects Mr. Faustino Betancourt, who relies on a scooter for mobility due to his physical disability. The bowl-type design and, above all, the inadequate height of the sink create significant barriers that prevent him from using it effectively and safely. ADAAG 2010 § 606.3 establishes that sinks should be installed with the front edge of the highest surface at a maximum of 34 inches (865 mm) above the finished floor or ground. By complying with ADAAG guidelines and installing sinks at an appropriate height, the restaurant could create a more inclusive and accessible environment for Mr. Betancourt and other individuals with disabilities. Making this simple adjustment would enhance his experience at the establishment and demonstrate the restaurant's commitment to equal opportunities and respect for the needs of all its customers.

48.    It is virtually impossible for the plaintiff to reach the sink from his seated position on the scooter. This lack of accommodation deprives him of a basic right: the ability to access essential facilities such as handwashing, which is crucial for personal hygiene and well-being.

49.    This significantly impacts Mr. Faustino Betancourt as he is forced to depend on the assistance of others every time he needs to wash his hands,

compromising his autonomy and privacy. This forced dependence creates uncomfortable and humiliating situations for him, as he must seek help from strangers for such a basic and personal task.

50.   In addition to the considerable height of the sink, the lower part of it is not designed to prevent contact with objects underneath, which means that the exposed pipes hinder comfortable and safe front access for wheelchair users or other mobility devices. This configuration does not comply with the guidelines established in ADAAG 2010 § 605.5. To ensure the accessibility and comfort of all individuals, especially those with disabilities like Mr. Betancourt Colón, it is essential to make adjustments to the sink's design. Installing an appropriate structure that covers the pipes and provides an unobstructed space will allow wheelchair users or similar devices to approach the sink safely and comfortably.

51.   Mr. Betancourt Colón observed that the paper towel dispenser on the left side of the sink is substantially inconsistent with the applicable regulations, as it is at an inappropriate height, and furthermore, the trash can located below interferes with comfortable use by a person with a disability. ADAAG 2010 §§ 604.7, 604.9.6 stipulate that paper towel dispensers should be installed at a maximum height of 36 inches (915 mm) above the finished floor. The paper towel dispenser becomes an additional obstacle for a person with a disability, like Mr. Betancourt Colón, as not being able to access it comfortably and securely forces him once again to depend on the assistance of others,

affecting the autonomy and dignity of Mr. Faustino Betancourt, or it obliges him to refrain from drying his hands.

52. During his visit, Mr. Faustino Betancourt observed that there is a restroom supposedly designated for use by people with disabilities. However, the barriers he encountered that made it impossible for him to access the facility comfortably and safely classify it as an inaccessible restroom:

    a.   The flush control of the toilet is poorly located, as it is behind the toilet instead of being on the open side as required by the applicable federal regulations, making it difficult to use for individuals with disabilities like Mr. Betancourt Colón. ADAAG 2010 §604.9.5 states that for accessibility, flush controls should be installed at a maximum of 36 inches (915 mm) above the finished floor. The flush controls should be located on the open side of the toilet.

    b.   Due to the poor positioning of the flush control, accessing the rear grab bar is impossible. Mr. Faustino Betancourt noticed that the access to the grab bar is obstructed by the flush control also located behind the toilet. ADAAG 2010 §604.5 refers to the provisions in ADAAG 2010 §609 regarding the proper installation of support bars. This regulation specifies that circular cross-section grab bars must have an outer diameter of at least 1/32 inches (2 mm) and a maximum of 51 inches, while non-circular ones must have a transverse dimension of 2 inches (51 mm) at most and a perimeter dimension of at least 4 inches (100

mm) and a maximum of 4.8 inches (120 mm). The space between the wall and the grab bar should be 1/38 inches (1 mm). The space between the grab bar and protruding objects below and at the ends should be at least 38/12 inches (305 mm). The grab bars must be installed horizontally, at least 33 inches (840 mm), and at most 36 inches (915 mm) above the finished floor, measured to the top of the gripping surface. For Mr. Betancourt Colón, grab bars are essential for his safety and comfort when using the restroom. The improper positioning of the grab bars is equivalent to not having them at all, as it forces individuals with physical disabilities like the plaintiff to face difficulties when transferring from their scooter to the toilet or sink. Grab bars provide stability and support, allowing them to maneuver safely and maintain balance during these transitions. The absence of proper grab bars can result in an uncomfortable and hazardous experience, increasing the risk of accidents and falls. Additionally, this situation forces him to rely more on the assistance of others for tasks that should be accessible to him independently, generating feelings of frustration and exclusion for Mr. Betancourt Colón.

c.    Mr. Betancourt Colón observed that the positioning of the toilet paper dispenser is significantly inconsistent with the applicable regulations, as it is placed too close to the toilet and at an inappropriate height for comfortable use by a person with a disability. ADAAG 2010

§§ 604.7, 604.9.6 stipulate that toilet paper dispensers should be installed at a maximum height of 36 inches (915 mm) above the finished floor. Not being able to access the dispenser comfortably and safely forces him once again to rely on the assistance of others, affecting Mr. Faustino Betancourt's autonomy and dignity.

d.    The entrance door knob to the restaurant is circular and gray, requiring the plaintiff, who uses a scooter due to his disability, to twist his wrist to use it. This makes it difficult for him to open the door comfortably and causes discomfort during his visits, risking injury to his hands, arms, or back as he tries to manipulate the knob from his position on the scooter. Additionally, the knob does not comply with accessibility regulations that establish the optimal height for door hardware. The lack of proper accessibility makes the plaintiff feel excluded and disadvantaged at the restaurant. The difficulty in entering and exiting the place creates a sense of unwelcomeness and a loss of independence and autonomy, as he may need assistance from others to open the door. ADAAG 2010 § 309.4 states that knobs and handles of doors and faucets must allow for one-handed operation without the need to grasp tightly, pinch, or twist the wrist. The force required to activate operable parts shall be a maximum of 5 pounds (22.2 N).

53.  The plaintiff may be affected in the future by the barriers that exist on

the property because the persistence of these barriers over time impacts Mr. Betancourt Colón's autonomy, independence, and overall well-being, which could lead to various negative long-term consequences.

54.    Furthermore, it is important to highlight that the plaintiff is determined to return to the property within the next few months to verify the removal of the aforementioned architectural barriers, enjoy the delicious cuisine offered by the restaurant at its different locations, particularly the plantain sandwich, appreciate the Latin atmosphere of the property, and because it serves as a good meeting point with friends or colleagues for social gatherings.

55.    Additionally, Mr. Faustino Betancourt holds hope that in the future, the property will make modifications to become more accessible. This would motivate him to continue visiting the place, supporting the possibility of positive change and contributing to allowing other customers to fully enjoy the experience without restrictions.

### III.    CAUSE OF ACTION

### Title III of the American with Disabilities Act

56.    The plaintiff reiterates and incorporates by reference all preceding paragraphs.

57.    The plaintiff asserts that RESTAURANTE EL PLATANAL, INC, as the owner, lessor, lessee, and operator of the Property, is responsible for complying with the requirements of Title III of the Americans with Disabilities Act (ADA).

58.   The barriers, as described in this complaint, have directly affected the plaintiff's ability to enjoy and participate in the facilities, depriving her of the full benefits of the goods and services offered by the restaurant in its two locations, and exposing her to an increased risk of accidents due to the difficulties in mobility posed by these barriers.

59.   The barriers identified at the Property, which were thoroughly explained, represent violations of the ADA's barrier removal requirements.

60.   The plaintiff maintains that the defendant has the financial resources and capabilities to remedy these violations by implementing solutions that align with the ADA guidelines.

61.   The defendant's failure to remove these architectural barriers constitutes a violation of Title III of the ADA. As a result of this violation, the plaintiff has experienced discrimination based on her disability, which has caused her substantial harm, including but not limited to physical inconvenience, emotional distress, and dignity harm.

62.   The plaintiff has suffered dignitary harm, which is a type of harm in discrimination cases, as expressed in the binding case Laufer v. Acheson Hotels, LLC, 50 F.4th 259 (1st Cir. 2022) ("Dignitary harm or stigmatic injuries caused by discrimination have long been held a concrete injury in fact"). These damages aim to compensate for the loss of dignity and self-esteem that a person may experience as a result of discrimination. In other words, dignitary harms recognize that discrimination can not only cause physical or

economic harm, but it can also deeply affect the self-image and self-esteem of the discriminated individual. This may include feelings of shame, humiliation, and disregard. The ADA allows individuals who have been discriminated against based on disability to seek compensation for dignitary harm. The plaintiff asserts a claim for dignitary damages in the following two independent ways: (1) by judicial recognition that dignitary harm has occurred to the plaintiff; (2) by imposing a nominal sum of one dollar as dignitary damages. No compensatory damages are sought.

63.   Due to the lack of knowledge regarding the construction and alteration history of the property at this time, the following allegations are made: the property was constructed and/or altered after March 15, 2012; in the alternative, the Property was constructed or altered after January 26, 1993; alternatively, the property was constructed before January 26, 1993, but the defendant has the financial resources to bring the property into compliance with the most current building codes.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Honorable Court:

A.   Declare that the defendant has violated the provisions of Title III of the Americans with Disabilities Act, 28 C.F.R. § 36.302(e), and Article 1536 of the Puerto Rico Civil Code.

B.   Issue a permanent injunction ordering the defendant to remove the

architectural barriers identified in this complaint and make the Property accessible to individuals with disabilities.

C.  In the event that the defendant continues their discriminatory conduct, it is requested, in accordance with 42 USC § 12188(a)(2) and 28 CFR § 36.504, that an order for the closure and shutdown of the Property be issued as a preliminary injunction to cease the discriminatory conduct until it has been sufficiently and convincingly demonstrated to the court that the discrimination has been eradicated.

D.  Dignitary damages in the amount of one dollar or through a judicial pronouncement declaring that the dignity of the plaintiff has been aggrieved.

E.  Attorney's fees, costs, and litigation expenses, to be borne by the defendant, as the prevailing party on their claims.

F.   The provision of any other remedy that is just and equitable, under the law or in equity, and that has not been expressly requested but is applicable as a matter of right and pursuant to Rule 42.4 of the Civil Procedure Rules of Puerto Rico.

**RESPECTFULLY SUBMITTED.**

**Dated**: July 24, 2023.

VELEZ LAW GROUP LLC
Civil Rights Division

s/José Carlos Vélez Colón
José Carlos Vélez Colón
USDC-PR 231014

1969 S. Alafaya Trail #379
Orlando, FL 32828-8732

E: vlg@velezlawgroup.com
T: (787)-422-1881
   (787)-422-1958

**PLAINTIFF'S ATTORNEY**